## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

REVERE DOCK, LLC,
ERICKSON'S INC., and
NEWCORP, INC.,

        Plaintiffs,

v.

DETROIT BULK STORAGE,
INC.,

        Defendant.

Case No.: 2:22-cv-10619
Hon.

**JURY TRIAL DEMANDED**

_____/

## COMPLAINT

Plaintiffs, Revere Dock, LLC ("Revere"), Erickson's Inc. ("Erickson's"), and Newcorp, Inc. ("Newcorp") (collectively, "Plaintiffs"), by and through their attorneys, Butzel Long, a professional corporation, state as follows:

## PRELIMINARY STATEMENT

1.    This case arises out of the November 26, 2019 collapse (the "Collapse") of the riverbank and a dock on the Detroit River located at 5851 West Jefferson Avenue, Detroit, Michigan (the "Property"). The Collapse was caused by the wrongful conduct of Defendant, Detroit Bulk Storage, Inc. ("DBS"), which conducted its business at the Property at the time in question pursuant to a lease between DBS and Revere, the owner of the Property.

2.     The Property included a commercial dock. The Collapse occurred because DBS improperly loaded and stored on the Property thousands of tons of materials such as sand, gravel and/or crushed stone (collectively, "Aggregate"). The Collapse resulted in the Aggregate, as well as the asphalt pad and other surface materials on which the Aggregate was placed (collectively, the "Released Materials"), sinking into the earth and pushing the earthen material through the seawall of the dock and into the Detroit River. The Property has been in heavy industrial use for over a century, and DBS knew or should have known that the earthen material under the Aggregate pile contained hazardous substances.

3.     Plaintiffs have incurred significant costs as a result of the Collapse. Accordingly, they bring this lawsuit: (i) as to claims brought under state and federal environmental statutes, to recover or obtain contribution toward response costs; (ii) as to the remining claims, to obtain an award of damages; and (iii) as to all claims, to obtain additional relief, such as interest and attorney's fees, as appropriate under the various Counts.

## PARTIES

4.     Revere is a Michigan limited liability company with its principal place of business in North Muskegon, Michigan.

5.     Erickson's is a Michigan corporation with its principal place of business in North Muskegon, Michigan.

2

6.     Newcorp is a Michigan corporation with its principal place of business in North Muskegon, Michigan.

7.     Revere and Erickson's are subsidiaries of Newcorp.

8.     DBS is a Michigan corporation with its principal place of business in Wayne County, Michigan.

9.     On information and belief, DBS is a transporter and provider of dry bulk material, including aggregate, by truck and navigable water, including along the Detroit River.

## JURISDICTION AND VENUE

10.     Subject matter jurisdiction is proper with respect to Counts VII and VIII, brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et. seq.*, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b), and with respect to the remaining claims pursuant to 28 U.S.C. § 1367.

11.     Subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1333, because an integral part of DBS's use of the Property involved maritime activity, that is, the unloading of Aggregate and other materials from ships in navigable waters.  For clarity, Plaintiffs invoke jurisdiction under 28 U.S.C. § 1333 only if and to the extent jurisdiction does not exist on the grounds set forth in ¶ 10.

3

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred within this District and the Defendant has its principal place of business in this District.  Venue is also proper pursuant to 42 U.S.C. § 9613(b) because the release or damages occurred in this District, and because this is the District in which the Defendant resides, may be found, and has its principal office.

13.     Personal jurisdiction over the Defendant is proper because the Defendant has its principal place of business in Michigan and availed itself of the privilege of doing business within this State.

## FACTUAL BACKGROUND

### The Property

14.     The Property is located at 5851 West Jefferson Avenue, Detroit, Michigan on the south side of West Jefferson Avenue between South Cavalry Street and Junction Street. The Property is located on the Detroit River and includes a commercial dock.

15.     Revere is the owner of the Property.

16.     DBS was a lessee of the Property.

17.     The Property was utilized for industrial purposes from at least 1908 until the mid-1980's.  A portion of the Property was developed in the early 1900's

for the Michigan Copper and Brass Company, which later became the Revere Copper and Brass Company.

18.     Revere Copper and Brass vacated the Property in 1985, and the Property reverted to the City of Detroit in November 1986. All of the former buildings associated with the Property were demolished between 1985 and 1986.

19.     Revere purchased the Property in 2015 from the City of Detroit.

20.     In connection with its purchase of the Property, Revere caused a Phase I Environmental Site Assessment to be conducted in accordance with the ASTM Practice 1527-13 standard and the Federal All Appropriate Inquiry Rule under 40 CFR 312, and Revere caused to be completed and disclosed a Baseline Environmental Assessment (BEA) in accordance with Part 201 of the Natural Resources and Environmental Protection Act, Public Act 451 of 1994, as amended (NREPA).

21.     The BEA identified the Property as a "facility" as defined under Part 201 of NREPA, indicating that the Property was impacted with hazardous substances in excess of applicable Part 201 criteria including, but not limited to arsenic, cadmium, chromium, copper, lead, mercury, selenium, silver, zinc, tetrachloroethylene, benzene, ethylbenzene, xylene, naphthalene and phenanthrene.

22.     Pursuant to MCL 324.20116, Revere disclosed to DBS that the Property was a "facility" and that the general nature and extent of known releases thereon are described in the BEA.

### The Lease

23.     Revere and DBS began discussions regarding DBS's desire to conduct its business at the Property in or about March 2019.

24.     DBS agreed to lease the Property from Revere in June 2019 to conduct DBS's business.

25.     As an express or implied obligation of the lease, DBS was obligated to, *inter alia*:

      a.    not commit waste;

      b.    not create a nuisance; and

      c.    comply with all applicable state, federal, county and municipal laws, ordinances and regulations, including environmental laws (collectively, "Laws").

26.     DBS first paid Revere for use of the Property on or about August 1, 2019.

27.     After taking possession of the Property, DBS began unloading on the Property Aggregate from ships, moving and storing the Aggregate on the Property and removing the Aggregate from the Property.

## The Collapse

28.     On November 26, 2019, approximately 200 feet of shoreline along the portion of the Property adjacent to the Detroit River collapsed (the "Collapse").

29.     The Collapse occurred because DBS overloaded the areas of the Property on which the Aggregate was stored, that is, it stored too much Aggregate too close to the River.

30.     According to a report (the "PME Report") issued by PM Environmental, Inc. ("PME"), "[t]he presence of the aggregate stockpile resulted in apparent rotational slope failure that displaced soils downward within and outward from the subject property to an area of the Detroit River immediately east of the former shoreline boundary."  PME Report at 3.  A copy of the PME Report is attached to this Complaint as **Exhibit A**.

31.     Sampling performed by the U.S. Environmental Protection Agency and PME indicated that as a result of the Collapse, hazardous substances, including but not limited to arsenic, cadmium, chromium, copper, lead, mercury, selenium, silver, zinc, tetrachloroethylene, benzene, ethylbenzene, xylene, naphthalene and phenanthrene, were released at concentrations exceeding Part 201 criteria onto the river bank and into the Detroit River.

## DBS's Prior Knowledge

32.     DBS knew or should have known of the risks posed by the overloading

of riverfront docks and storing heavy piles of Aggregates too close to the shoreline, including the risk of collapse and discharge into the Detroit River because, among other things, it has been in the aggregate storage business for multiple years, including along the Detroit River in close proximity to the Property.

33.    DBS knew or should have known of the presence of hazardous substances at the Property because, among other things, it knew of the BEA and of the historical use of the Property.

34.    DBS knew or should have known of the City of Detroit permitting requirements for storing large amounts of Aggregate outdoors and along the river front, as it has been in the business for multiple years, has stored bulk material in the city of Detroit previously and, on information and belief, has previously obtained such permits.

35.    The November 2019 Collapse was not the first of its kind for DBS.  On January 28, 2011, a dock owned by U.S. Steel and leased to DBS collapsed under the weight of more than 100,000 tons of road salt, offloaded at the site by DBS for Morton Salt Co.  U.S. Steel claimed in its lawsuit against DBS that the salt piles were double the height permitted under DBS's lease with U.S. Steel.

**EGLE's Involvement**

36.    On December 6, 2019, following the Collapse, the Michigan Department of Environment, Great Lakes, and Energy ("EGLE") conducted a site

8

inspection at the Property and in the adjacent waters, including a drone flyover. During the inspection, EGLE staff confirmed that soils, asphalt, concrete, steel, and aggregate had been displaced onto the bottomlands and into the Detroit River.

37.     After the inspection, EGLE identified several violations of Part 31, Water Resources Protection, of the Natural Resources and Environmental Protection Act ("NREPA"), MCL § 324.3101, *et seq.*; Part 201, Environmental Remediation, of the NREPA, MCL § 324.20101, *et seq.*; Part 301, Inland Lakes and Streams, of the NREPA, MCL § 324.30101, *et seq.*; and the associated administrative rules, including:

a.      Discharging of a substance that is or may become injurious to entities described in Section 3109(1) of Part 31, MCL § 324.3109(1) into the waters of the state;

b.      Unlawful occupation and filling of floodplain and stream channel;

c.      Violation of the due care requirements of Part 201 that apply because of the release of hazardous substances at the Facility and the need to mitigate off-property risks resulting from erosion of surface soils and the property; and

d.      Filling of Detroit River bottomlands without the benefit of a permit under Part 301.

38.     On or about December 11, 2019, EGLE issued a Violation Notice and

Order to Restore, stating that:

> The Michigan Department of Environment, Great Lakes, and
> Energy (EGLE) Water Resources Division (WRD) conducted an
> inspection on December 6, 2019 at the above referenced parcel of
> property. The purpose of the inspection was to evaluate the property
> for compliance with Part 31, Water Resources Protection, and Part
> 301, Inland Lakes and Streams, of the Natural Resources and
> Environmental Protection Act, 1994 PA 451, as amended (NREPA).
> []
> At the time of the inspection, the WRD staff observed that a bank
> failure occurred along approximately 200 feet of the property
> shoreline resulting in the discharge of sediment, fill material,
> aggregate and debris to the Detroit River. Please be advised that the
> unauthorized discharge of such material to waters of the State is a
> violation of Part 31 of NREPA.
>
> Further, Section 324.30102 of Part 301 prohibits the fill of
> bottomland without first obtaining a permit from EGLE. A review
> of the WRD files indicates that no permits have been issued for this
> activity at the property. Therefore, it appears that this event has
> resulted in a violation of Part 301.
>
> The violations identified in this Violation Notice are continuing and
> are violations of Part 31 and Part 301 of the NREPA. This letter is
> being sent to you because you have been identified as the property
> owner responsible for the property and therefore must take
> immediate action to achieve and maintain compliance with Part 31
> and Part 301 of NREPA.
>
> In consideration of the requirements of Part 301, the WRD has
> determined that a permit would not have been approved for this
> activity. Therefore, within **15 days** of the date of this letter, or a
> mutually agreed upon schedule, you must submit a restoration plan
> to bring the property into compliance with the requirements of Part
> 301.

39.     On December 11, 2019, EGLE issued Compliance Communications to both Revere and DBS as the owner and operator of the Property, respectively, stating that EGLE staff "confirmed that contaminated soils, asphalt and aggregate were observed to have entered the Detroit River" and "hazardous substances are present in soils at the Property at levels that may pose a potential unacceptable exposure via contact with those soils…[,]" and EGLE notified Revere as the owner and DBS as the operator of the Property that, pursuant to Part 201, Rule 1013(1)(b), Revere and DBS were "required to undertake response activities as necessary to mitigate off property risks resulting from erosion of surface soils at the property".

40.     Revere retained PME to assist in addressing EGLE's requirements.

41.     On January 24, 2020, PME submitted an interim response plan to EGLE on behalf of Revere, outlining the actions being taken to evaluate geotechnical conditions, control erosion and turbidity, and characterize materials in preparation of submitting a restoration plan.

42.     On March 30, 2020, PME submitted a Restoration Plan to EGLE on behalf of Revere.

43.     On April 15, 2020, EGLE issued an Enforcement Notice to Revere, offering to resolve the alleged violations through an Administrative Consent Order ("ACO").

44.     On August 17, 2020, Revere entered into an ACO with EGLE.  A copy of the ACO is attached to this Complaint as **Exhibit B**.

45.     In the ACO, EGLE alleged that as a result of DBS's storage of Aggregate, Revere was in violation of MCL § 324.3101, *et seq.*, MCL § 324.20101, *et seq.*, and MCL § 324.30101, *et seq.*

46.     The ACO required Revere to take multiple actions to remediate the issues caused by the Collapse.  *See* ACO §§ 3.1-3.10.

47.     The ACO required Revere to pay several penalties, including $15,000 "as partial compensation for the cost of investigations and enforcement activities," (ACO § 9.1), $45,000 "for the violations specified in Section II of [the ACO]" (ACO § 9.2), and $5,000 as a "stipulated penalty" (ACO § 9.3).

**Response Activities**

48.     As a result of the Collapse, the construction of a new seawall along the entire eastern boundary of the Property was required to contain and stabilize the shoreline and prevent further releases into the river.

49.     Response activities also included the following activities:

   a.     Preparation and submittal of permits for construction and failure material/sediments;

   b.     Re-sampling and delineation of activities;

   c.     Installation of construction-phase erosion and turbidity controls;

12

d.   Removal of debris immediately east of the existing dock to facilitate sea wall construction;

e.   Installation (driven) of new seal wall pipe piles and sheet pile panels immediately east of the current dock and installation of battered piles further west;

f.   Removal of the current dock structure in combination with installation of associated tiebacks and dead-men, backfilling, and concrete cap installation;

g.   Removal and proper disposal of riverbank failure material and sediment to a depth of 27-feet below river surface;

h.   Reporting and regulatory submittals, including as-built documentation for sea wall construction and riverbank failure material and sediment removal/disposal activities;

i.   Preparation of a post-construction Documentation of Due Care Compliance report; and

j.   Restoration of the Great Lakes Water Authority's outfall located on the Property.

50.   Plaintiffs have incurred significant costs in connection with the response activities, which costs were reasonably incurred under the circumstances and are necessary costs of response consistent with the National Contingency Plan.

13

**City of Detroit Settlement**

51.     The City of Detroit sued Revere and DBS in the Circuit Court of Wayne County because of the Collapse (the "City of Detroit Case").  The City of Detroit Case was *City of Detroit v. 5851 W. Jefferson Detroit, MI 48209, et. al*, No. 20-001163-CH (Wayne Cty. Cir. Ct.).

52.     On May 7, 2020 the court in that case accepted a settlement between the City and Revere (the "Settlement").

53.     The Settlement required Revere to take multiple actions, including:

   a.     Submitting a building permit application for use of the subject property for outdoor storage;

   b.     Submitting a certificate of operation for bulk material storage application;

   c.     Submitting a building permit application for the existing asphalt pad;

   d.     Obtaining a geotechnical report;

   e.     Submitting a copy of the bank restoration plan;

   f.     Submitting a building permit application for bank restoration;

   g.     Completing bank restoration; and

   h.     Making payment to the City of Detroit in the amount of $63,000.

14

54.     On or about September 7, 2020, the City and DBS entered into a stipulated order of dismissal for the City of Detroit Case.

55.     DBS was required to pay $11,570 to the City, and the City retained DBS's $3,430 bond.

## CLAIMS FOR RELIEF

### COUNT I — Breach of Lease (Revere only)

56.     Revere incorporates paragraphs 1-55 by reference.

57.     DBS breached its agreement with Revere by, among other things, committing waste, creating a nuisance and not complying with applicable Laws.

58.     Revere has been injured by the breach by, *inter alia*, incurring substantial costs to remediate and repair the damage caused by DBS and by being deprived of the beneficial use of the Property.

WHEREFORE, Revere asks that this Court:

A.      Award Revere all damages it has suffered on account of the breach, together with interest; and

B.      Award Revere such other and further relief as this Court finds just.

### COUNT II — Nuisance (Revere only)

59.     Revere incorporates paragraphs 1-55 by reference.

60.     By causing the Collapse, DBS interfered with Revere's use and enjoyment of the Property and created a nuisance.

15

61.     The Collapse caused significant harm to Revere.

62.     DBS knew or must have known that by overloading the dock, the Collapse was substantially certain.

63.     In the alternative, DBS caused the Collapse negligently or recklessly.

64.     The Collapse was a public nuisance because, *inter alia*, it created a risk of harm to the general public because of the release of contaminants into the Detroit River, in violation of federal and state environmental laws, including, but not limited to, MCL § 324.3109(1), and therefore is *prima facie* evidence of a public nuisance under MCL § 324.3109(6).

65.     Although a public nuisance, Revere suffered a type of harm different and greater than the general public.

66.     The Collapse was also a private nuisance.

67.     The Collapse was a nuisance *per se*, because the discharge of contaminants into the Detroit River is a nuisance at all times and under all circumstances and because DBS operated its business without obtaining the permits required under municipal law.

68.     In the alternative, the Collapse was a nuisance in fact, because the natural tendency of DBS's actions was to create danger and inflict injury on the Property.

69.     Revere was damaged by DBS's wrongful conduct.

16

WHEREFORE, Revere asks that this Court:

A.      Award Revere all damages it has suffered on account of the nuisance, together with interest; and

B.      Award Revere such other and further relief as this Court finds just.

### COUNT III — Waste (Common Law) (Revere only)

70.     Revere incorporates paragraphs 1-55 by reference.

71.     DBS's conduct was unreasonable and resulted in physical damage to the Property and a substantial diminution in its value.

72.     DBS committed waste to the Property.

73.     Revere was damaged by DBS's waste.

WHEREFORE, Revere asks that this Court:

A.      Award Revere all damages it has suffered on account of the waste, together with interest; and

B.      Award Revere such other and further relief as this Court finds just.

### COUNT IV — Statutory Waste (MCL § 600.2919) (Revere only)

74.      Revere incorporates paragraphs 1-55 by reference.

75.      DBS is a tenant for years within the meaning of MCL § 600.2919(2).

76.     DBS's conduct was unreasonable and resulted in physical damage to the Property and a substantial diminution in its value.

77.     DBS committed waste to the Property by causing the Collapse.

78.     Revere has been damaged by DBS's waste.

79.     Pursuant to MCL § 600.2919, DBS is liable for double damages.

WHEREFORE, Revere asks that this Court:

A.     Award Revere two times the damages it has suffered on account of the nuisance, together with interest; and

B.     Award Revere such other and further relief as this Court finds just.

### COUNT V — Negligence (Revere only)

80.     Revere incorporates paragraphs 1-55 by reference.

81.     DBS owed Revere a duty of care to load, unload and store the Aggregate so as to not commit waste, cause a nuisance or fail to comply with applicable Laws.

82.     DBS breached its duty of care.

83.     Revere has been damaged by DBS's breach.

WHEREFORE, Revere asks that this Court:

A.     Award Revere all damages it has suffered on account of the negligence, together with interest; and

B.     Award Revere such other and further relief as this Court finds just.

### COUNT VI — Cost Recovery under Part 201 of NREPA (MCL § 324.20126a) (All Plaintiffs)

84.     Plaintiffs incorporate paragraphs 1-55 by reference.

85.     Plaintiffs bring this Count for cost recovery under Part 201 of NREPA.

86.     Counts VI and VII are pled in the alternative.

87.     In this Count, all terms in quotation marks have the meaning set forth in MCL § 324.20101, unless otherwise indicated.

88.     DBS is an "operator" of the Property and was an "operator" at the time of the "release" of "hazardous substances" at and from the Property.

89.     The Property is a "facility."

90.     DBS's activities causing the Collapse resulted in a "release" of "hazardous substances" in excess of applicable Part 201 cleanup criteria along the riverbank and into the Detroit River.

91.     As a result of the Collapse, Plaintiffs have undertaken "response activit(ies)" and have incurred "response activity costs" reasonably necessary under the circumstances.

92.     DBS caused "discharge" of "hazardous substances" at and from the "facility" and is a liable party under MCL § 324.20126.

93.     Plaintiffs are entitled to recover from DBS the "response activity costs" incurred as a result of DBS's "release" of "hazardous substances" pursuant to MCL § 324.20126a.

94.     An actual controversy exists between Plaintiffs and DBS as to Plaintiffs' entitlement to recovery of "response activity costs" from DBS.

WHEREFORE, Plaintiffs ask that this Court:

19

A.    Award Plaintiffs all "response activity costs" incurred by them, together with interest; and

B.    Award Plaintiffs such other and further relief as this Court finds just.

## COUNT VII — Contribution under Part 201 of NREPA (MCL § 324.20129) (All Plaintiffs)

95.    Plaintiffs incorporate paragraphs 1-55 by reference.

96.    Plaintiffs incorporate paragraphs 85-92 by reference.

97.    If Plaintiffs bear any responsibility for an activity causing the Collapse, resulting in a "release" of "hazardous substances" at the Property, they acted independently of DBS and there is a reasonable basis for allocating responsibility.

98.    DBS is obligated to contribute toward the "response activity costs" incurred by Plaintiffs.

99.    An actual controversy exists between Plaintiffs and DBS as to the allocation of responsibility for the "response activity costs."

WHEREFORE, Plaintiffs ask that this Court:

A.    Award Plaintiffs DBS's allocable share of all "response activity costs" incurred by Plaintiffs, together with interest; and

B.    Award Plaintiffs such other and further relief as this Court finds just.

## COUNT VIII — Cost Recovery under Part 201 of NREPA (MCL § 324.20107a) (All Plaintiffs)

100.    Plaintiffs incorporate paragraphs 1-55 by reference.

101.   Plaintiffs incorporate paragraphs 85-92 by reference.

102.   If DBS is not otherwise liable for the "environmental contamination," the Collapse caused an "exacerbation" of the existing contamination.

103.   DBS failed to undertake measures to prevent the "exacerbation."

104.   DBS failed to exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances.

105.   Plaintiffs have incurred "response activity costs" as a result of DBS's failure to comply with its obligations under Section 20107a of NREPA.

106.   DBS is liable for Plaintiffs' "response activity costs" attributable to any exacerbation.

WHEREFORE, Plaintiffs ask that this Court:

A.     Award Plaintiffs DBS's allocable share of all "response activity costs" incurred by Plaintiffs, together with interest; and

B.     Award Plaintiffs such other and further relief as this Court finds just.

### COUNT IX —Cost Recovery under CERCLA
### (42 U.S.C. § 9607) (All Plaintiffs)

107.   Plaintiffs incorporate paragraphs 1-55 by reference.

108.   Plaintiffs bring this Count pursuant to CERCLA.

109.   In this Count, all terms in quotation marks have the meaning set forth in 42 U.S.C. § 9601, unless otherwise indicated.

110.   DBS was at the time of the "disposal" of "hazardous substances" at the Property and thereafter, an "operator" of the Property.

111.   The Property is a "facility."  DBS knew or had reason to know that it was a "facility."

112.   DBS's activities causing the Collapse resulted in the "disposal" of "hazardous substances" into the "environment."

113.   DBS is responsible for the activity causing the "disposal" of "hazardous substances" at and from the Property and is a liable person under section 107(a) of CERCLA.

114.   As a result of the Collapse and resulting disposal of hazardous substances at the Property, Plaintiffs have undertaken "response activity(ies)" and have incurred necessary costs of "response".

115.   The "response" costs incurred by Plaintiffs were consistent with the National Contingency Plan.

116.   The "release" and/or "disposal" of "hazardous substances" were caused by DBS's willful misconduct or willful negligence within the privity or knowledge of DBS.

117.   Pursuant to 42 U.S.C. § 9607, DBS is liable for Plaintiffs' full and total cost of "response" and "damages."

WHEREFORE, Plaintiffs ask that this Court:

A.     Award Plaintiffs all response activity costs, removal actions and remediation costs incurred by them, together with interest; and

B.     Award Plaintiffs such other and further relief as this Court finds just.

### COUNT X — Contribution under CERCLA
### (42 U.S.C. § 9613) (All Plaintiffs)

118.   Plaintiffs incorporate paragraphs 1-55 by reference.

119.   Plaintiffs incorporate paragraphs 109-116 by reference.

120.   DBS is a liable person under 42 U.S.C. § 9607(a).

121.   Revere has resolved its liability to the State of Michigan in an administratively approved settlement.

122.   DBS is liable for contribution toward "response costs" incurred pursuant to 42 U.S.C. § 9613(f)(3)(B).

WHEREFORE, Plaintiffs ask that this Court:

A.     Award Plaintiffs DBS's allocable share of all "response costs" incurred by Plaintiffs, together with interest; and

B.     Award Plaintiffs such other and further relief as this Court finds just.

### COUNT XI —Contribution (MCL § 600.2925a) (All Plaintiffs)

123.   Plaintiffs incorporate paragraphs 1-55 by reference.

124.   If Revere bears any responsibility for the Collapse, DBS is jointly and severally liable.

125.   Plaintiffs have paid more than their *pro rata* share of costs.

126.  Plaintiffs are entitled to contribution from DBS.

WHEREFORE, Plaintiffs ask that this Court:

A.     Award Plaintiffs DBS's allocable share of all costs incurred by Plaintiffs, together with interest; and

B.     Award Plaintiffs such other and further relief as this Court finds just.

## **JURY DEMAND**

Plaintiffs respectfully request a trial by jury for all claims so triable.

Respectfully submitted,

**BUTZEL LONG, P.C.**

*/s/: Sheldon H. Klein*
Sheldon H. Klein (P41062)
David J. DeVine (P70012)
201 W. Big Beaver
Suite 1200
Troy, MI 48084
Tel: (248) 258-1616
Fax: (248) 258-1439
klein@butzel.com
devine@butzel.com
*Attorneys for Plaintiffs*

Dated: March 23, 2022

IBLOOMFIELD\000146115\0007\3248251-3/23/22